UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Anthony Armstrong,

                       Plaintiff,

                                              Civ. No. 10-1340 (RHK/SRN)
                                              **MEMORANDUM OPINION**
                                              **AND ORDER**

v.

Target Corporation, Minneapolis Police
Department, and Lieutenant Stoll,

                       Defendants.

Anthony Armstrong, Minneapolis, Minnesota, Plaintiff pro se.

Brian A. Wood, Eric J. Steinhoff, Laurie W. Meyer, Lind Jensen Sullivan & Peterson, PA, Minneapolis, Minnesota, for Defendant Target Corporation.

## INTRODUCTION

Plaintiff Anthony Armstrong brings multiple claims against Target Corporation ("Target") and the City of Minneapolis Police Department ("Minneapolis") arising from an incident in the downtown Minneapolis Target store on August 10, 2009. Armstrong's claims against Target are as follows: (1) Violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; (2) Intentional Infliction of Emotional Distress; and (3) Negligent Infliction of Emotional Distress.[1] Presently before the Court is Target's Motion to Dismiss. For the reasons set forth below, the Court will grant Target's Motion

---

[1] Armstrong also brings a Fourth-Amendment claim. (Compl. ¶ 167.) However, that claim is not directed against Target, the Defendant filing the instant Motion. (Mem. in Opp'n 14.)

with respect to the two emotional-distress claims and deny it with respect to the civil-rights claims. Additionally, because Armstrong failed to serve Minneapolis or show adequate cause for this failure, the claims against Minneapolis will also be dismissed.[2]

## BACKGROUND

Armstrong is of "Sri Lankan ethnicity/East Indian race." (Compl. ¶ 2.) On August 10, 2009, he was shopping at the Target store located at 900 Nicollet Avenue in Minneapolis. (Id. ¶ 12.) While there, he began speaking to a Caucasian woman who was using a photo kiosk in the store, and the two exchanged comments about her photos. (Id. ¶¶ 15–16.) Following this exchange, he came into contact with a number of Target employees. He describes these interactions in great detail.

First, while Armstrong was speaking to the woman at the photo kiosk, a uniformed security guard (who Armstrong identifies as "Cody") approached and asked whether Armstrong was using the kiosk. (Id. ¶ 17.) He replied that he was looking at pictures with the woman, and Cody suggested that he use another available photo terminal. (Id. ¶¶ 19, 21.) Armstrong declined this suggestion twice. (Id. ¶¶ 20, 22.) Cody then asked the woman if she was alright (id. ¶ 23), and she replied that she was "fine." (Id. ¶ 24.)

---

[2] In response to the Court's Order to Show Cause why Minneapolis and Lieutenant Stoll (who was also listed as a party in the Complaint) were not served, Armstrong clarified that he did not intend to sue Stoll. (Reply to Order to Show Cause, Doc. No. 29, at 2.) With respect to Minneapolis, Armstrong stated that he "consciously allowed the deadline to serve the City of Minneapolis to elapse" due to concerns about obtaining paralegal employment, but (without pointing to any reason or authority for his view) he "felt that if he changed his mind he would still have a certain amount of time to serve the City of Minneapolis past the Complaint filing date." (Id. at 2–3.) Indeed, Armstrong did have a certain amount of time to serve Minneapolis after the Complaint was filed—120 days, as provided by Federal Rule of Civil Procedure 4(m)—but that time has long since passed. Because Armstrong has not shown "good cause" for his failure to serve as required by Rule 4(m), the Court will dismiss his claims against Minneapolis.

2

These actions left Armstrong "in shock," and he "[could]n't believe" what had happened. (Id. ¶¶ 25–28.)

A short time later, while Armstrong was still standing near the woman (who was still viewing her photographs), he saw Cody again and asked if he could speak with the store supervisor. (Id. ¶ 29.) Cody left to find the supervisor, and at this time the photo kiosk attendant emerged from behind the counter and stood near the woman Armstrong had been talking to. (Id. ¶ 30.) Armstrong told the attendant: "Thank you for calling the security guards on me. Obviously, I was going to physically assault her." (Id. ¶¶ 31–35.) He repeated this comment twice, but the attendant denied having called security. (Id. ¶¶ 33, 35.)

At this point, another young man (later identified by Armstrong as "Bryan") approached and said Armstrong's comment to the attendant had been inappropriate and he should leave the store. Armstrong ignored him, and Bryan repeated his statement. (Id. ¶ 37–39.) Armstrong said he would not leave the store, and Bryan again said that he should leave the building. (Id. ¶¶ 43–50.) Bryan was not dressed in any uniform, and Armstrong did not know he worked for Target. When Armstrong eventually demanded to know his identity, Bryan revealed that he was head of security for the Target store. (Id. ¶¶ 51–63.) However, because Bryan produced no identification except a standard Target nametag, Armstrong continued to challenge whether he was actually head of security. (Id. ¶¶ 64–79.)

While Armstrong was speaking to Bryan, the store supervisor (identified as "Libby") arrived. (Id. ¶ 80.) She confirmed that Bryan was head of security and

3

answered Armstrong's questions about how he could report a grievance. (Id.) While they were talking, another uniformed Target security guard approached and told Armstrong he would have to leave the store. (Id. ¶¶ 81–84.) He initially refused to leave, but after Libby agreed to accompany him off the premises and give him the names of the other employees involved (for his grievance), he left the store. (Id. ¶¶ 85–88.) Accompanied by Libby and the guard, Armstrong entered the skyway outside of Target where he obtained the names of the Target employees from Libby. (Id. ¶ 90.)[3]

Once in the skyway, a uniformed police officer (identified elsewhere in the Complaint as Lieutenant Stoll) approached Armstrong and told him he was "on a no-trespass" and could not return to Target for one year.[4] (Id. ¶¶ 91–93.) Stoll asked Armstrong for his identification and other information. (Id. ¶¶ 97–105.) Armstrong was uncomfortable standing in the skyway where passers-by could see him being questioned, and he expressed this to Stoll. (Id. ¶¶ 106–07.) Stoll asked if he would rather go to the security room, but Armstrong declined. (Id. ¶¶ 108–09.) After confirming there were no warrants on Armstrong, Stoll asked a few more questions about where he lived and worked. (Id. ¶¶ 111–30.) Bryan was present during the exchange between Stoll and Armstrong. (Id. ¶¶ 97, 110.)

---

[3] Although the Complaint avers that Armstrong obtained these individuals' names, it refers to the employees by only first names or other descriptors throughout.

[4] Neither party has clearly explained this so-called "no-trespass." The Court assumes it was a demand to stay off the premises as contemplated by both Minnesota and Minneapolis law, which make it a misdemeanor to "return[] to the property of another within one year after being told to leave the property and not to return." Minn. Stat. § 609.605, subd. 1(b)(8); see http://www.ci.minneapolis.mn.us/police/crime-prevention/docs/MP-9018.pdf.

4

Based on these events, Armstrong filed this lawsuit. His Complaint rambles on for 167 paragraphs, explaining in excruciating detail everything from what he wished to purchase at Target (a sterilite ultra-seal 8.1 qt. food container) to the appearance and body language of people he encountered and the statements he exchanged with them (often quoted verbatim). It contains numerous claims in five separate counts. The claims against Target, which are the subject of this Motion, are summarized as follows: four counts of violating Title II of the Civil Rights Act, 42 U.S.C. § 2000a(a), one count of intentional infliction of emotional distress, and one count of negligent infliction of emotional distress.[5] Target moves to dismiss all of these claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[6]

**STANDARD OF REVIEW**

The Supreme Court set forth the standard courts are to apply when evaluating a motion to dismiss under Rule 12(b)(6) in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 547. A "formulaic recitation of the elements of

---

[5] Specifically, the claims are as follows: Count I alleges a civil-rights violation under § 2000a and Negligent Infliction of Emotional Distress based on the conduct of the first uniformed security guard, Cody. (Id. ¶¶ 131–35.) Count II charges another violation of § 2000a, as well as Intentional Infliction of Emotional Distress, arising from the actions of Target's head of security, Bryan. (Id. ¶¶ 136–43.) Count III alleges a third violation of § 2000a based on the actions of the second uniformed security guard who removed Armstrong from Target's premises. (Id. ¶¶ 144–49.) Finally, Count IV claims another civil-rights violation pursuant to § 2000a. The fourth count is based on the police officer's conduct, but it is directed at Target. (Id. ¶¶ 150–55.) Count V is directed at Minneapolis (id. ¶¶ 156–67); hence, the Court does not address it.

[6] In an earlier Order, the Court canceled the hearing on Target's Motion to grant Armstrong a continuance to respond. Having now reviewed the parties' Motion papers, the Court has concluded that oral argument will not materially assist its resolution of this matter, and it is deciding the Motion based on the written submissions.

a cause of action" is not sufficient. Id. at 555. Instead, there must be adequate facts set forth in the complaint to "nudge[] the[] claims across the line from conceivable to plausible." Id. at 570. The Eighth Circuit has added that a plaintiff must "assert facts that affirmatively and plausibly suggest that [he] has the right he claims, rather than facts that are merely consistent with such a right." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (citing Twombly, 127 S. Ct. at 1964–66). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

For purposes of a motion to dismiss, the Court takes all facts alleged in the complaint as true. Twombly, 550 U.S. at 555–56. A complaint must be construed liberally, and any allegations or reasonable inferences arising from the complaint must be interpreted in the light most favorable to the plaintiff. Id. at 554–56. Additionally, pro se complaints "must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Conley v. Gibson, 355 U.S. 41, 45–46 (1957)) (internal quotations omitted).

## ANALYSIS

### I. Extra-Pleading Materials

As a threshold matter, when deciding a motion to dismiss a court generally considers only the complaint and documents whose contents are alleged in the complaint and not disputed. Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003). The court may consider extra-pleading material if it is "necessarily embraced by the pleadings." Piper Jaffray Cos., Inc. v. Nat'l Union Fire Ins. of Pittsburgh, 967 F. Supp.

1148, 1152 (D. Minn. 2007). When evidentiary matter beyond the pleadings is submitted in connection with a motion to dismiss, the Court may either (1) decline to consider it or (2) consider it and convert the motion into one for summary judgment. Fed. R. Civ. P. 12(d); Sherwood Med. Indus., Inc. v. Deknatel, Inc., 512 F.2d 724, 725 n.2 (8th Cir. 1975). Here, Armstrong submitted one exhibit and four affidavits of his own with his response to Target's Motion. Pursuant to Rule 12(d), the Court declines to consider these documents in deciding the Motion.[7]

## II. Civil-Rights Claims

Title II of the Civil Rights Act, 42 U.S.C. § 2000a *et seq.*, prohibits discrimination on the basis of race in places of public accommodations. It provides:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a). Section 2000a(b) goes on to list places of public accommodation covered by the statute, which fall primarily within three categories: (1) inns and hotels, (2) restaurants and lunch counters, and (3) theaters and places of exhibition or entertainment. Id. § 2000a(b)(1)–(3). However, a fourth category extends coverage to:

> *[a]ny establishment* (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) *within the premises of which is physically located any such covered establishment*,

---

[7] Even if the Court were to consider Armstrong's exhibit and affidavits, its analysis would not change. The exhibit, a letter from the Attorney General's Office to Armstrong laying out various ways to pursue a complaint, adds nothing to Armstrong's claims. The four affidavits merely re-tell the events already set forth in Armstrong's Complaint in even greater detail.

7

and (B) which holds itself out as serving patrons of such covered establishment.

Id. § 2000a(b)(4) (emphasis added).

Target's only argument for dismissing Armstrong's civil-rights claims is that because Target is a retail establishment, it is not covered by § 2000a. It is correct that retail stores are not places of public accommodation within the meaning of Title II. See, e.g., Priddy v. Shopko Corp., 918 F. Supp. 358, 359 (D. Utah 1995). However, as Armstrong points out, Target's downtown-Minneapolis store is more than simply a retail establishment; it also includes a restaurant. (See Opp'n Mem. 2.)[8] A retail store not otherwise covered by the Act gains coverage if it has another establishment on its premises that is a place of public accommodation. 42 U.S.C. § 2000a(b)(4)(A)(ii); see United States v. DeRosier, 473 F.2d 749, 757 (5th Cir. 1973) (explaining that § 2000a(b)(4) extends coverage to otherwise uncovered establishments); United States v. Johnson Lake, Inc., 312 F. Supp. 1376, 1380–81 n.1 (S.D. Ala. 1970) (quoting legislative history of subsection (b)(4) which expressly recognized that a retail establishment not otherwise covered would become covered if it had a lunch counter on its premises); United States v. Med. Soc'y of S.C., 298 F. Supp. 145, 152 (D.S.C. 1969) (same).

A restaurant is undoubtedly a covered establishment under Title II. 42 U.S.C. § 2000a(b)(2). Hence, the fact that Target has a restaurant on its premises brings it within § 2000a(b)(4) and makes it a covered establishment. See, e.g., Thomas v. Tops Friendly

---

[8] Target does not dispute that its downtown store includes a restaurant but argues that Armstrong was not in the restaurant at the time of the incident. (Reply Mem. 5.) However, as the Court reads § 2000a(b), the presence of a restaurant on the store's premises brings it within the scope of coverage regardless of where the alleged discrimination takes place.

Mkts., Inc., No. A96CV1579, 1997 WL 627553, at *4 (N.D.N.Y. Oct. 8, 1997) ("[S]ubsection (b)(4) brings the type of facility in the instant case, a retail grocery store, under its coverage when the facility contains . . . an establishment covered under subsection (b)(2), i.e., a lunch counter.")[9] Because Target is a covered place of public accommodation under Title II and it points to no other reason why Armstrong's civil-rights claims should be dismissed, its Motion is denied as to those claims.

## III. Tort Claims

In addition to his civil-rights claims, Armstrong alleges two tort claims for intentional infliction of emotional distress and negligent infliction of emotional distress. The Court addresses each in turn.

First, a claim for intentional infliction of emotional distress under Minnesota law requires a plaintiff to show that the conduct at issue (1) was extreme and outrageous, (2) was intentional or reckless, (3) caused emotional distress, and (4) the distress was severe. Hubbard v. United Press Int'l, Inc., 330 N.W.3d 428, 438–39 (Minn. 1983). To be actionable, a defendant's conduct must be "so atrocious that it passes the boundaries

---

[9] The two cases Target cites to argue that it is not covered under Title II—Priddy v. Shopko Corp., 918 F. Supp. 358 (D. Utah 1995), and Chu v. Gordmans, Inc., No. 01-CV-182, 2002 WL 802353 (D. Neb. Apr. 2, 2002)—do not persuade the Court. Chu actually undercuts Target's position. It acknowledged that a retail store *could* be covered under Title II if it has a covered establishment on its premises; however, the court held that because the store at issue was "strictly a retail" store without any covered establishment on its premises, it was not covered. Id. at *3–4. In Priddy, on the other hand, the plaintiff apparently argued that the store was covered because *Shopko was located within the premises of an otherwise covered establishment* (the extension of coverage provided by § 2000a(b)(4)(A)(**ii**)). The Court held that, although there may have been other covered establishments "in close proximity" to Shopko, Shopko was not part of the same establishment and thus was not covered. Priddy, 918 F. Supp. at 358. Priddy failed to address the opposite scenario (the coverage provided by § 2000a(b)(4)(A)(**i**)), where a store is covered if *another covered establishment* is located *within the store*. Because the instant case presents this opposite scenario, Priddy is inapt.

9

of decency and is utterly intolerable to the civilized community." Id. at 439. Additionally, the distress caused must be "so severe that no reasonable man could be expected to endure it." Id.; see also Lee v. Metro. Airport Comm'n, 428 N.W.2d 815, 823 (Minn. Ct. App. 1988) (the distress must be more than the type people commonly endure in their lives). The plaintiff's severe distress must also be linked to the defendant's actions to sustain a claim. See, e.g., Bohdan v. Altool Mfg. Co., 411 N.W.2d 902, 908–09 (Minn. Ct. App. 1987) (claimed distress insufficient as a matter of law due to lack of medical evidence linking plaintiff's paranoia to defendant's conduct).

In support of his intentional infliction of emotional distress claim, Armstrong recites a detailed series of statements he exchanged with Bryan, Target's head of security. (Compl. ¶¶ 29–79.) He claims that Bryan approached him, said his previous comments to the photo-kiosk attendant were inappropriate,[10] requested that he leave the building, and continued to repeat this request, all before identifying himself as head of security. These alleged actions fall well short of "extreme and outrageous" conduct. See Hubbard, 330 N.W.2d at 439 ("The operation of this tort is sharply limited to cases involving particularly egregious facts"). Moreover, even if Armstrong did allege extreme and outrageous conduct, the Complaint makes no claim that Armstrong suffered severe distress. The closest it comes is asserting that Armstrong "felt threatened" by Bryan's

---

[10] This refers to Armstrong saying to the photo-kiosk attendant three times: "Thank you for calling the security guards on me. Obviously, I was going to physically assault her."

10

repeated requests that he leave the store. (Compl. ¶ 45.)[11] Because Armstrong fails to allege severe distress, his Complaint lacks even a bare recitation of the elements of the cause of action, let alone sufficient facts to support those elements. See Twombly, 550 U.S. at 547, 555. His intentional infliction of emotional distress claim must be dismissed.

Second, Armstrong claims negligent infliction of emotional distress. Minnesota courts permit a cause of action for negligent infliction of emotional distress for "a person within the zone of danger of physical impact who reasonably fears for his or her own safety and who consequently suffers severe emotional distress with resultant physical injury." Stadler v. Cross, 295 N.W.2d 552, 553 (Minn. 1980). The Minnesota Supreme Court recognizes no exception to the "zone of danger" requirement for this tort, and this Court has thus declined to allow claims based on any other theory. See Meyer v. Tenvoorde Motor Co., 714 F. Supp. 991, 994–95 (D. Minn. 1989) (Magnuson, J.) (discussing and declining to adopt an exception to the zone-of-danger requirement recognized by the Minnesota Court of Appeals because such an exception conflicts with Minnesota Supreme Court cases and the Restatement (Second) of Torts).

Armstrong fails to allege that any physical impact ever occurred (or was even threatened), and he pleads no facts to this effect. He recounts communications between

---

[11] Armstrong also asserts that he felt "ashamed, vulnerable, and degraded" when he was questioned by the police officer in the skyway after leaving Target's store. (Compl. ¶ 106.) This appears in the portion of the Complaint under the heading "Fourth Amendment Violation & Intentional Infliction of Emotional Distress," which describes facts underlying Armstrong's claims against Minneapolis, not against Target. However, even if these facts relate to claims against Target, this type of distress is still insufficient. See Ecklund v. Vincent Brass & Aluminum Co., 351 N.W.2d 371, 379 (Minn. Ct. App. 1984) (finding that humiliation, embarrassment, insomnia, unsteady nerves, depression, inability to convey self-confidence, and avoiding socializing did not constitute severe emotional distress).

11

himself and various Target employees in great detail, yet nowhere in his exhaustive Complaint does he claim he feared for his physical safety. Moreover, as discussed above, the Complaint fails to allege severe emotional distress—an essential element of both torts. See Stadler, 295 N.W.2d at 553. Armstrong's claim of negligent infliction of emotional distress must also be dismissed.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**:

1. Target's Motion to Dismiss (Doc. No. 7) is **GRANTED IN PART** and **DENIED IN PART** as follows: the Negligent Infliction of Emotional Distress claim in Count I of Armstrong's Complaint (Doc. No. 1) and the Intentional Infliction of Emotional Distress claim in Count II of the Complaint are **DISMISSED WITH PREJUDICE.** In all other respects, Target's Motion is **DENIED**; and

2. Armstrong having failed to show good cause why Minneapolis was not timely served, as ordered by this Court on October 27, 2010 (Doc. No. 28), Count V of the Complaint and all claims against Minneapolis are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. Pro. 4(m); and

3. The Order to Show Cause (Doc. No. 28) is **DISCHARGED**.

Dated: November 15, 2010          s/Richard H. Kyle
                                  RICHARD H. KYLE
                                  United States District Judge