**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Anthony Armstrong,

      Plaintiff,

               Civ. No. 10-1340 (RHK/JJG)
               **MEMORANDUM OPINION**
v.                  **AND ORDER**

Target Corporation,

      Defendant.

Anthony Armstrong, Minneapolis, Minnesota, Plaintiff, *pro se*.

Brian A. Wood, Eric J. Steinhoff, Lind Jensen Sullivan & Peterson, PA, Minneapolis, Minnesota, for Defendant.

**INTRODUCTION**

In this action, Plaintiff Anthony Armstrong alleges that Defendant Target Corporation ("Target") violated Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, by removing him from its downtown-Minneapolis store in August 2009. Armstrong originally asserted multiple claims arising from the same incident at the Target store; however, all that remains is his Title II claim. (See Order on Motion to Dismiss, Doc. No. 30.) Armstrong now moves for summary judgment. For the reasons set forth below, his Motion will be denied.

**BACKGROUND**

Armstrong's factual allegations are set forth in detail in the Court's prior Order on Target's Motion to Dismiss. (Doc. No. 30.) They will not be repeated herein.

Following the resolution of Target's Motion to Dismiss, a Pretrial Scheduling Order established deadlines for discovery.  (See Doc. No. 51.)   Disclosures under Rule 26(a)(1) are due by May 1, 2011, discovery is to be completed on or before December 1, 2011, and the dispositive-motion deadline is not until February 2012.  (See id.)  However, before discovery had even begun, Armstrong filed this Motion for Summary Judgment.  In support of his Motion, he re-submitted two exhibits and four separate affidavits setting forth his detailed account of the events giving rise to this action.[1]  (See Doc. Nos. 40–43; Mem. in Supp. Exs. SJ-A, SJ-B.)[2]

In response to the Motion, Target submitted affidavits from three employees who were involved in the complained-of events: Bryan Studley (identified by Armstrong as "head of security 'Bryan' (plain clothed)"); Cody Heinold (identified as "first uniformed security guard 'Cody'"); and Elizabeth Hauser (identified as "Libby").  These affidavits largely corroborate the gist of the incident—Armstrong was speaking with a female customer at the store's photo kiosks, he had contact with a number of Target employees, including security guards and a manager, and he was eventually asked to leave the premises.  However, the employees' recollections of the details differ from Armstrong's.

---

[1] The affidavits and exhibits submitted in support of Armstrong's Motion are identical to the documents and affidavits he previously submitted in opposition to Target's Motion to Dismiss, although he had the affidavits re-notarized.

[2] Armstrong's Reply Memorandum filed in support of this Motion caused him to exceed the 12,000-word limit imposed by Local Rule 7.1(d); he filed a "Word Count Permission" Request with his Reply, asking the Court to consider it despite the word limit. (Doc. No. 57.)  Although the Court notes that Armstrong's initial Memorandum in Support of his Motion contained extensive discussion of irrelevant topics, his request is nonetheless **GRANTED**, and the Court has considered his Reply in deciding the instant Motion.

Both Studley and Heinold state that the female customer's body language appeared "uncomfortable" or "strange" while Armstrong was speaking to her. (Studley Aff. ¶¶ 8–10; Heinold Aff. ¶ 3.) Studley asked Armstrong if he would like to use another available kiosk, and he claims Armstrong immediately became upset and confrontational. (Studley Aff. ¶ 13.) When Heinold approached, he observed Armstrong being "very upset and very loud." (Heinold Aff. ¶ 8.) Hauser, the leader on duty the day of the incident, similarly recalls that Armstrong was "loud and upset" when she first came into contact with him. (Hauser Aff. ¶ 4.) Officer Stoll was called "because Armstrong would not comply" with the employees' requests that he leave the store. (Heinold Aff. ¶ 10.) All three employees aver that Armstrong's race played no part in their observations or the actions they took, and none of them recalls any comment about Armstrong's race on the date in question. (Studley Aff. ¶ 16; Heinold Aff. ¶ 11; Hauser Aff. ¶ 10.)

Since no discovery has been conducted to date, the affidavits and documents mentioned above comprise the entire record.

## STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue as to any material fact and Armstrong is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The plaintiff bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 244 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the non-moving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d

721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  As the party opposing summary judgment, Target may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

Title II of the Civil Rights Act, 42 U.S.C. § 2000a *et seq.*, prohibits discrimination on the basis of race in places of public accommodations.  It provides:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a).  In order to establish a prima facie case of public-accommodation discrimination, Armstrong must show that: "(1) he is a member of a protected group; (2) he was similarly situated by circumstance to other individuals not members of such a group; and (3) he was treated more harshly or disparately than other similarly situated non-group members."  O'Neal v. Moore, Civ. No. 06-2336, 2008 WL 4417327, at *24 (D. Minn. Sept. 24, 2008) (Montgomery, J.), aff'd, 355 F. App'x 975 (8th Cir. 2009) (citations omitted).  Target has not attempted to rebut Armstrong's claim that he is a member of a protected group due to his race.  It does, however, dispute whether Armstrong was treated more harshly or disparately than other similarly situated individuals who were not members of his protected group.

The parties fundamentally differ in their characterizations of Armstrong's conduct leading up to his removal from the store. Armstrong contends that his interaction with the female customer at the photo kiosk was merely "innocent" and "idle conversation," and the woman assured him that she was alright. (Armstrong Aff. (Doc. No. 40) at 2; Compl. ¶¶ 24, 27.) Conversely, the Target employees claim they heard Armstrong making "unusual comments," heard the woman giving "short uncomfortable responses" (Studley Aff. ¶ 10), and observed her "uncomfortable and agitated" body language (id. ¶ 8; accord Heinold Aff. ¶ 3 ("their body language and the situation seemed strange")).[3] Armstrong further claims he spoke "softly and casually" to the kiosk attendant following his initial interaction with Target security guards (Compl. ¶ 31), while the guards claim he "immediately got upset" and became "confrontational" and "loud" when he was asked to leave the woman alone (Studley Aff. ¶ 13; Heinold Aff. ¶ 8). Studley and Heinold both claim they would take the same actions in a situation involving a patron of any race who acted in a similarly confrontational manner. (Studley Aff. ¶ 13; Heinold Aff. ¶ 11.)

These differing accounts create a material fact issue. The facts surrounding Armstrong's conduct are necessary to determine whether he was treated disparately from individuals in similar circumstances who were not members of a protected class. If Armstrong was acting calmly and rationally, then the actions taken by Target's

---

[3] Armstrong argues Target's affidavits contain "perjury" because they contradict his own recollection. (See Reply Mem. ¶¶ 7–11.) However, the mere fact that people remember events differently does not mean one must be lying. At the summary-judgment stage, contradictory testimony means there exists a "genuine dispute as to [a] material fact." Fed. R. Civ. P. 56(a). Moreover, even if Target's affidavits are perjured (which this Court is in no way suggesting), the Supreme Court has acknowledged that perjured affidavits may still overcome a motion for summary judgment. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 522 (1993) ("[P]erjury may purchase the defendant a chance at the factfinder.")

employees likely were harsher than their treatment of calm, rational patrons of other races. On the other hand, if he was making another customer uncomfortable, responding confrontationally, and being generally loud and disruptive, it is difficult to conclude that Target's response was any harsher than it would have been in a situation involving a similarly-belligerent customer of any race. Simply put, there are genuine issues of material fact making summary judgment inappropriate. See Fed. R. Civ. P. 56(c)(2).

Armstrong also argued extensively about damages in his memorandum supporting this Motion. (See Mem. in Supp. at 16–24.) The issue of damages is irrelevant at this stage. However, in his discussion of damages, Armstrong raised arguments sounding in the Fourteenth Amendment, 42 U.S.C. §§ 1981, 1983, and 1988, and various state-law torts. Armstrong's only remaining claim against Target is for public-accommodations discrimination in violation of Title II of the Civil Rights Act, 42 U.S.C. § 2000a (see Order on Motion to Dismiss, Doc. No. 30), and continued discussion of other theories and claims is thus unwarranted and should be avoided in future submissions.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 38) is **DENIED.**[4]

Dated: April 12, 2011                        s/Richard H. Kyle
                                                                                     RICHARD H. KYLE
                                                                                     United States District Judge

---

[4] In denying Armstrong's Motion, the Court in no way expresses an opinion on either party's ability to survive a later summary-judgment motion on a more extensive factual record once discovery has been conducted.